IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

| | |
|---|---|
| UNITED STATES OF AMERICA | INFORMATION |
| v. | Case No. 25-cr-52-wmc |
| ANDREW POGOSYAN, | 18 U.S.C. § 371<br>18 U.S.C. § 554 |
| Defendant. | |

THE UNITED STATES ATTORNEY CHARGES:

## COUNT 1

### Background

At times material to this information:

1. Beginning in or about September 2022, ANDREW POGOSYAN, exported scientific lab and diagnostic research equipment using POGOSYAN's company, OMEGA, and transshipped through third-party countries, including Turkey, Kazakhstan, Uzbekistan, Latvia, and Lithuania, which is a common tactic employed by persons procuring items on behalf of end users in Russia. Because the items were destined for Russia, a license was required from the U.S. Department of Commerce. No license was sought or obtained by POGOSYAN, Omega Diagnostics, LLC (OMEGA), or their co-conspirators in connection with these exports.

### The Defendant and Coconspirators

2. POGOSYAN is a Russian-born lawful citizen of the United States, who, since around at least September 2022, has been engaged in the unlawful procurement

and export of scientific lab and diagnostic research equipment components, many of which are subject to Export Administration Regulations (EAR).

3. In February 2002, POGOSYAN incorporated OMEGA, which was categorized as a systems analysis and engineering consulting and distribution service company. POGOSYAN used OMEGA to distribute scientific and diagnostic research equipment to Russia and elsewhere. POGOSYAN is the sole employee at OMEGA.

4. Russian Company-1, located in St. Petersburg, Russia, was a company that, amongst other things, provided chemical research and testing activity for the Russian military.

5. Co-Conspirator A was the Department Head for Procurement and Logistics for Russian Company-1.

6. Russian Company-2, located in St. Petersburg, Russia, provided scientific and diagnostic research equipment components to other Russian companies.

7. Co-Conspirator B was a representative of Russian Company 2, and worked a reseller of scientific and diagnostic research equipment.

8. Turkish Company-1, located in Istanbul, Turkey, was a distributor of cargo packaging materials.

9. Kazakhstan Company-1, located in Almaty, Kazakhstan, was a provider of scientific and diagnostic research equipment components to other companies and end-users.

10. Prior to the full-scale Russian invasion of Ukraine in February 2022, POGOSYAN and OMEGA exported scientific lab equipment components almost exclusively to end users in Russia. Electronic Export Information (EEI) filings indicate

that from January 2021 to February 2022, OMEGA completed approximately 29 exports directly to Russia.

11.  Following Russia's full-scale invasion and the imposition of heightened export controls on items bound for Russia, OMEGA's direct shipments to Russia decreased exponentially. Instead, beginning around May 2022, OMEGA began exporting scientific and diagnostic research equipment components, including components subject to the Export Administration Regulations (EAR), to Turkish Company-1. In or around October 2022, OMEGA started exporting scientific and diagnostic research equipment components subject to the EAR to Kazakhstan Company-1. As of July 9, 2023, POGOSYAN, through OMEGA, had exported at least 16 shipments to Turkish Company-1 and Kazakhstan Company-1.

12.  Data from U.S. Customs and Border Protection's Automated Export System (AES) data shows that, since March 31, 2022, OMEGA has altered its export activities significantly. In addition to exporting scientific and diagnostic research equipment components to Turkey and Kazakhstan, OMEGA also exported items to Uzbekistan, Latvia, and Lithuania. The vast majority of exports by POGOSYAN and OMEGA to Turkey, Kazakhstan, Uzbekistan, Latvia, and Lithuania were transshipped to ultimate end-users in Russia.

The Export Control Reform Act and Export Administration Regulations

13.  The Export Administration Regulations, Title 15, Code of Federal Regulations, Sections 730-774, were promulgated by the U.S. Department of Commerce, Bureau of Industry and Security (BIS) to regulate the export of goods, technology, and software from the United States. Under the Export Control Reform Act

3

("ECRA"), it is a crime to violate, attempt to violate, conspire to violate, or cause a violation of any regulation, order, license, or authorization issued pursuant to the statute, including the EAR. *See* 50 U.S.C. § 4819(a)(1).

14. Through EAR, BIS reviews and controls the export of certain items from the United States to foreign countries, in accordance with Title 15, Code of Federal Regulations, Sections 734.2-3. In particular, BIS places restrictions on the export and reexport of items that it determines could make a significant contribution to the military potential of other nations or that could be detrimental to the foreign policy or national security of the United States. Under the EAR, such restrictions depend on several factors, including the technical characteristics of the item, the destination country, the end user, and the end use of the item.

15. The most sensitive items subject to EAR controls are identified on the Commerce Control List (CCL) and set forth in Title 15, Code of Federal Regulations, part 774, Supplement Number 1. Items listed on the CCL were categorized by an Export Control Classification Number (ECCN), each of which is subject to export control requirements depending on destination, end use, and end user of the item.

16. On February 24, 2022, BIS implemented export controls under Title 15, Part 746 (Embargoes and Other Special Controls) in response to Russia's full-scale invasion of Ukraine. These regulations expanded licensing requirements to Russia and targeted Russia's defense, aerospace, and maritime sectors. Additionally, the regulations instituted a BIS license requirement for the export of certain items shipped to Russia, and applications for such license were also subject to a policy of denial with certain limited exceptions. On September 16, 2022, these license requirements were

expanded under Supplement Number 6 to Part 746, named "Russian Industry Sanctions," and included ECCN EAR99 items identified as being potentially "useful to Russia's chemical and biological weapons production capabilities." These items consisted of discrete chemicals, biologics, fentanyl and its precursors, and related equipment. In addition, paragraph (g) of Supplement 6 identified equipment and other items that BIS determined were not manufactured in Russia or are otherwise important to Russia in developing advanced production and development capabilities to enable advanced manufacturing across a number of industries.

The EAR99 Items

17. During the relevant time period, the below items were identified as EAR99 items and classified accordingly by BIS under the corresponding ECCNs. As of September 16, 2022, an export license was required from the U.S. Department of Commerce to export or reexport each of these items to Russia:

| EAR99 Items |
|---|
| Thermo POP-7 Polymer pouch, Catalog Number 4393714 |
| Waters Automated Back Pressure Regulator Needle |
| Restek RTX-1 Pona Capillary Column |
| Thermo TracePlot Column, Catalog Number 26004-6030 |
| CEM Corporation Rink Amide ProTide Resin Pack |

## The Conspiracy to Defraud the United States

18. In or about September 2022, through in or about October 2023, in the Western District of Wisconsin and elsewhere, the defendant,

ANDREW POGOSYAN,

did knowingly and willfully combine, conspire, confederate, and agree with others known and unknown to defraud the United States, that is:

    a. to willfully export and cause the exportation of goods from the United States to Russia without first having obtained the required licenses from the Department of Commerce in violation of Title 50, United States Code, Section 4819(a), and Title 15, Code of Federal Regulations, Part 746, Supplement Number 6;

    b. to knowingly fail to file and to submit false and misleading export information through Electronic Export Information filings and the Automated Export System, and cause the same, in violation of Title 13, United States Code, Section 305, and Title 15, Code of Federal Regulations, Section 30.71;

    c. to fraudulently and knowingly export and send and attempt to export and send from the United States merchandise, articles, and objects contrary to laws and regulations of the United States, and receive, conceal, buy, sell, and facilitate the transportation, concealment, and sale of such merchandise, articles, and objects, prior to exportation, knowing the same

to be intended for exportation contrary to laws and regulations of the United States, in violation of Title 18, United States Code, Section 554; and

d. to defraud the United States government by interfering with and obstructing a lawful government function, that is, the enforcement of laws and regulations relating to the export, re-export, and supply of goods and provision of services from the United States to Russia by dishonest means.

## Objects of the Conspiracy

19. The objects of the conspiracy were:

a. to acquire scientific and diagnostic research equipment components that were manufactured and sold in the United States on behalf of entities that operated in Russia;

b. to export scientific and diagnostic research equipment components from the United States indirectly to Russia and to Russian end users;

c. to conceal the prohibited activities and transactions from detection by the U.S. Government so as to avoid penalties and disruption of the illegal activities;

d. to profit through these illegal activities; and

e. to evade the prohibitions and licensing requirements of ECRA and the EAR.

## Manner and Means of the Conspiracy

20. Throughout the course of the conspiracy, POGOSYAN, Co-Conspirator A, Co-Conspirator B, and others placed orders for scientific and diagnostic research

7

equipment components with companies in the United States on behalf of Russian customers and attempted to obfuscate the fact that their end users of the equipment were in Russia.

21. POGOSYAN and other co-conspirators, used the following manner and means, among others, to accomplish the objects of the conspiracy:

   a. POGOSYAN and other co-conspirators, including individuals associated with Russian Company-1 and Russian Company-2, used email and other means to communicate;

   b. Co-Conspirator A, along with individuals associated with Russian Company-1, and Co-Conspirator B, along with individuals associated with Russian Company-2, solicited quotes from and negotiated with POGOSYAN for the procurement of U.S. scientific and diagnostic research equipment components for Russian end-users;

   c. POGOSYAN purchased items from companies in the United States to fulfill orders from Russian customers, including by providing false information to U.S. companies;

   d. POGOSYAN and other co-conspirators, including individuals associated with Russian Company-1 and Russian Company-2, arranged for shipment of the U.S. goods from the United States to transshipment points in Kazakhstan, Uzbekistan, Turkey, Latvia, and Lithuania to conceal the true end users and end destinations;

e. POGOSYAN falsified or failed to submit export and shipping records regarding shipments from the United States, including by providing false and misleading information to the shippers and freight forwarders, to conceal the ultimate destination of the goods and the ultimate end users of the goods;

f. POGOSYAN was paid by individuals associated with Russian Company-1 and Russian Company-2 for the shipment of controlled items to end-users in Russia; and

g. POGOSYAN and other co-conspirators, including individuals associated with Russian Company-1 and Russian Company-2, caused the U.S. goods to be exported from the United States to individuals and entities in Russia without obtaining the required licenses from the Department of Commerce.

Overt Acts in Furtherance of the Conspiracy

22. Each of the exports described below, which were made by POGOSYAN on behalf of OMEGA after September 16, 2022, was intended for transshipment to Russia in violation of U.S. export controls. POGOSYAN had direct knowledge of this intended destination and actively participated in accomplishing the successful transshipment. Further, due to his experience selling scientific and diagnostic research equipment components to Russia, POGOSYAN was aware of the restrictions on shipment of these parts to Russia without first obtaining a license.

23. The relevant exports are:

a. **Four Thermo POP-7 Polymer Pouches:** On or around December 10, 2022, POGOSYAN exported four Thermo POP-7 Polymer pouches, which are

9

consumables for use in scientific instruments and act as the separation medium to aid in the separation of chemicals for testing. The export of the four Pop-7 Polymer pouches were made to Russian Company-2 in fulfilment of an order that POGOSYAN received directly from Co-Conspirator B on or around September 9, 2022. A BIS License Determination concluded that these Thermo Polymers are subject to the EAR and classified under ECCN EAR99 (Supplement 6), and that, during the time frame of September 9, 2022 to December 10, 2022, such item required a BIS export license to be shipped to Russia, which none of POGOSYAN, OMEGA, Co-Conspirator B, or Russian Company-2 possessed. POGOSYAN caused a false EEI filing for this shipment to be submitted to the U.S. government that inaccurately listed Turkish Company-1 as the ultimate consignee (*i.e.*, end user) and Turkey as the ultimate destination for this shipment.

b. **One Waters Automated Back Pressure Regulator Needle and one Restek TRX-1 Pona Capillary Column:** On or around January 25, 2023, POGOSYAN exported a Waters Needle, which is a stainless steel fluid valve needle that is a replacement/consumable part for various laboratory analytical instruments. The Waters Needle helps control the pressure of various fluids being diagnosed for chemical composition. On or about the same date, POGOSYAN exported a Restek Column, which is a consumable and metallic tubular device used to help separate compounds as part of Waters analysis in laboratory diagnostics. POGOSYAN exported both the Waters Needle and the Restek Column to Russian Company-1 in fulfillment

of an order that POGOSYAN received directly from Co-Conspirator A on or around January 11, 2023. BIS License Determinations concluded that these items are subject to the EAR and classified under ECCN number EAR99 (Supplement 6) and that, during the time frame of January 11, 2023, to January 25, 2023, such items required a BIS export license to be shipped to Russia, which none of POGOSYAN, OMEGA, Co-Conspirator A, or Russian Company-1 possessed. POGOSYAN caused a false EEI filing for this shipment to be submitted to the U.S. government that inaccurately listed Kazakhstan Company-1 as the ultimate end user and Kazakhstan as the ultimate destination for this shipment.

c. **One Thermo TracePlot Column:** On or around January 30, 2023, POGOSYAN exported a Thermo TracePlot Column which is a consumable metallic tubular device used in analytical systems. The column helps to separate compounds, solvents, isomers, and other materials as part of chemical analysis in laboratory diagnostics. The Thermo TracePlot Column was exported to Russian Company-2 in fulfilment of an order that POGOSYAN received directly from Co-Conspirator B on or about January 21, 2023. A BIS License Determination concluded that the Thermo TracePlot Column is classified as ECCN EAR99 (Supplement 6), and that, during the time frame of January 21, 2023 to January 30, 2023, such items required a BIS export license to be shipped to Russia, which none of POGOSYAN, OMEGA, Co-Conspirator B, or Russian Company-2 possessed. POGOSYAN caused an EEI filing for this shipment to be submitted to the

U.S. government that inaccurately listed Turkish Company-1 as the ultimate end user and Turkey as the ultimate destination for this shipment.

d. **One CEM Corporation Rink Amide ProTide Resin Pack**: On or around January 30, 2023, POGOSYAN exported a CEM Corporation ProTide Resin Pack which is a package of resin substance composed of organic compounds used in various diagnostic tools for a range of biological testing to Turkish Company-1 in fulfilment of an order that POGOSYAN received directly from Co-Conspirator B on behalf of Russian Company 2 on or around January 21, 2023. A BIS License Determination concluded that the CEM Corporation ProTide Resin Pack is classified as ECCN EAR99 (Supplement 6), and that, during the time frame of January 21, 2023 to January 30, 2023, this item required a BIS export license to be shipped to Russia, which none of POGOSYAN, OMEGA, Co-Conspirator B, Russian Company 2, or Turkish Company-1 possessed. POGOSYAN caused an EEI filing for this shipment to be submitted to the U.S. government that inaccurately listed Turkish Company-1 as the ultimate end user and Turkey as the ultimate destination for this shipment.

(All in violation of Title 18, United States Code, Section 371).

## COUNT 2

24. The factual allegations in paragraphs 1 through 23 of this information are hereby realleged and incorporated by reference herein.

25. On or about December 10, 2022, in the Western District of Wisconsin, the defendant,

ANDREW POGOSYAN,

did willfully and knowingly export and send from the United States merchandise, articles and objects, specifically four Thermo POP-7 Polymers Pouches, items set forth in Title 15, Code of Federal Regulations, Part 746, Supplement Number 6, contrary to Export Administration Regulations, a law and regulation of the United States.

(In violation of Title 18, United States Code, Section 554.)

## COUNT 3

24. The factual allegations in paragraphs 1 through 23 of this information are hereby realleged and incorporated by reference herein.

25. On or about January 25, 2023, in the Western District of Wisconsin, the defendant,

ANDREW POGOSYAN,

did willfully and knowingly export and send from the United States, merchandise, articles and objects, specifically one Waters Automated Back Pressure Regulator Needle and one Restek TRX-1 Pona Capillary Column, items set forth in Title 15, Code of Federal Regulations, Part 746, Supplement Number 6, contrary to United States laws and regulations, to wit: Title 50, United States Code, Sections 4819.

(In violation of Title 18, United States Code, Section 554.)

## COUNT 4

26. The factual allegations in paragraphs 1 through 23 of this information are hereby realleged and incorporated by reference herein.

27. On or about January 30, 2023, in the Western District of Wisconsin, the defendant,

ANDREW POGOSYAN,

did willfully and knowingly export and send from the United States, merchandise, articles, and objects, specifically one Thermo TracePlot Column and one CEM Corporation Rink Amide ProTide Resin Pack, items set forth in Title 15, Code of Federal Regulations, Part 746, Supplement Number 6, contrary to United States laws and regulations, to wit: title 50, Title 50, United States Code, Section 4819.

(In violation of Title 18, United States Code, Section 554.)

6-23-2025
Date

TIMOTHY M. O'SHEA
United States Attorney